# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4327-19

IN THE MATTER OF
B.T.L.

_____

Argued October 19, 2021 – Decided March 2, 2022

Before Judges Fisher and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Petition No. 0253-XTR-2020-000001.

Joseph R. Donahue argued the cause for appellant B.T.L. (Brickfield & Donahue, attorneys; Joseph R. Donahue, on the briefs).

Deepa Jacobs, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Appellant B.T.L. appeals from the July 14, 2020 final extreme risk

protective order (FERPO) entered against him by the Law Division pursuant to

the Extreme Risk Protective Order Act of 2018 (Act), N.J.S.A. 2C:58-20 to -32.[1] We affirm.

I.

In 2015, police were dispatched to B.T.L.'s home. His teenage daughter told arriving officers she was scared because B.T.L. and his fiancé, J.N., were fighting. B.T.L. admitted the couple had been arguing on the back deck of the house. When officers noticed blood on his pants, B.T.L. claimed that J.N. broke a glass during the argument and he was cut on the shards. However, when officers later spoke with J.N. they noticed she was bleeding from a cut on her mouth. She was uncooperative and denied knowing the cause of her injury. J.N. subsequently said that during the argument B.T.L. struck her in the face. B.T.L. denied striking J.N. and claimed she attacked him. It was later determined he suffered a laceration on his thumb that required stitches.

B.T.L. was arrested and charged with simple assault. Ultimately, the charge was dismissed, and no restraining order was issued after J.N. testified at a hearing that she was the initial aggressor and that if she had not attacked B.T.L. he would not have needed to defend himself by hitting her. At the hearing in

---

[1] We refer to appellant by his initials in compliance with Administrative Directive #19-9, "Guidelines for Extreme Risk Protective Orders" (August 12, 2019), Guideline 8(a).

A-4327-19

the present matter, B.T.L. testified that he had been abused by J.N. for six years and when she began striking him, he "felt like that was the appropriate time to defend myself. I will tell you that there was no rage involved, there was no anger. There was like, you know it was a one hit thing."[2]

In 2020, B.T.L. contacted police and informed them that his girlfriend, R.M.S., was at his home intoxicated and refusing to leave. When officers arrived, B.T.L. told them R.M.S. had been drinking since the prior day, that he did not want her in his house, and that she ignored his instructions to leave.

The officers approached R.M.S. and, after determining that her level of intoxication prevented her from safely leaving the home on her own accord, requested emergency medical services. Because R.M.S. was uncooperative with medical treatment and resisted attempts to restrain her, officers handcuffed her to the stretcher for her safety. She was transported to a hospital, where she was transferred to the control of hospital security.

---

[2] B.T.L.'s 2015 arrest and charge were later expunged. The trial court, however, considered the arrest and charge for purposes of the FERPO hearing. See N.J.S.A. 2C:52-19 (permitting the inspection of the files and records relating to an expunged arrest and charge upon a showing of good cause and a compelling need where the records are the subject of litigation or judicial proceedings). Although B.T.L.'s firearms were removed from his home after the 2015 incident, they were returned by court order after the matter was resolved with instructions that they be secured with trigger locks and stored in a safe.

A few hours later, K.L., the brother-in-law of R.M.S., contacted B.T.L. about R.M.S. having been transported to the hospital.  He was angry that R.M.S. had been handcuffed and was in the hospital.  He blamed B.T.L. for the situation and was under the mistaken impression that B.T.L. had assaulted R.M.S.

The two men exchanged electronic messages including a threat by K.L. to "kick [B.T.L.'s] ass" and messages from K.L. stating "I'm on my way[,]" "C u shortly[,]" and "Come outside, I'm here."  B.T.L., believing K.L. was outside, twice called 9-1-1.  He also initiated the following text message exchange:

> [B.T.L.]:    Ready faggot?  Who's the bigger man you cunt?  You?  You and your pussy whipped life.  Never met a bigger cunt in my life.  Come on by.  I'll introduce you to some real man shit.  Oh and btw.  Your CUNY wife is an ugly cunt.  Like the ugliest font I've seen in a decade.
>
> [K.L.]:    Lmao, see you soon.
>
> [B.T.L.]:    Ready willing and able faggot.
>
> [K.L.]:    Call the police again and have them call me you wimp.
>
> [B.T.L.]:    Come on by.  Wanna taste my .45?  Or .225?  Or .9?  Or .40?  Oh you probably don't understand man talk.  Cus you are a huge faggot.  Ask your cunt wife if you can text me back.  Oh she must've said no, so you can't.  Cuz you are a YUGE tool (crying/laughing face emoji).  Biggest faggot I ever met.

4

A-4327-19

Meanwhile, police were at K.L.'s home in a nearby town in response to his inquiries about the status of R.M.S. He showed officers the text message exchange with B.T.L. The content of the exchange was relayed to officers who were responding to B.T.L's home. When they arrived, B.T.L., who was visibly intoxicated, admitted sending the messages, but claimed he did so after K.L. threatened him and because he was attempting to scare him off. At the request of police, B.T.L. surrendered the firearms and ammunition he had in the home, as well as his firearms purchaser identification card (FPIC). The officers secured seven firearms, including a .40 caliber handgun with two ten-round magazines, an assault rifle with three ten-round magazines, two twelve-gauge shotguns, and approximately 150 boxes of ammunition. One handgun was found unlocked in the living room next to ammunition. The other firearms were found in safes in two locations in the house. No weapon was loaded. As the officers accompanied B.T.L. through the house to collect his weapons and ammunition, he became increasingly agitated and hostile. He cursed at the officers and stated he hoped they all got murdered.

A detective who was at the home filed a petition for entry of an FERPO. Referring to the 2015 incident, the detective alleged B.T.L had a history of threats or acts of violence towards others, a prior arrest, and a prior domestic

violence charge. In addition, the detective alleged B.T.L. had threatened K.L. with violence in his final text message, specifically referring to several of his weapons, and threatened the officers by stating his hope that they were murdered. The detective also cited as a relevant factor B.T.L.'s intoxication on the night he threatened K.L. and the officers.

A municipal court judge, finding that B.T.L. posed an immediate threat and present danger of causing bodily injury to himself or others through use of a firearm, entered a temporary extreme risk protective order (TERPO) against B.T.L. The TERPO prohibited B.T.L. from owning, purchasing, possessing, or receiving firearms, ammunition, a FPIC, a permit to purchase a handgun, or a permit to carry a handgun. In addition, the TERPO directed B.T.L. to surrender to law enforcement any firearms, ammunition, FPIC, or handgun permits in his possession and revoked any FPIC or handgun permits previously issued to him.

On July 15, 2020, after a two-day hearing, during which B.T.L., R.M.S., and the detective testified, Judge Margaret M. Foti issued an oral opinion granting the petition for an FERPO. After B.T.L. filed a notice of appeal, Judge Foti issued a comprehensive written amplification of her findings of fact and conclusions of law pursuant to Rule 2:5-1(b).

A-4327-19

In her written opinion, the judge found the detective who testified to be credible. One the other hand, she found B.T.L. lacked credibility. The judge accorded no weight to B.T.L.'s explanation for why he assaulted J.N. in 2015. The court found B.T.L.'s testimony regarding past abuse by J.N. was self-serving and not corroborated by any evidence in the record.

In addition, the judge found that B.T.L.'s explanation for sending "vile . . . and violent threats" of firearm violence to K.L. – that he was intending only to scare K.L. from coming to his home – lacked credibility. The court found that B.T.L.'s invitation to K.L. to come to his home along with a threat of violence escalated the likelihood of a confrontation involving firearms.

The judge also found R.M.S. to lack credibility. She concluded that R.M.S.'s testimony was intended solely to deflect blame from B.T.L. for his threat against K.L. While the court found that R.M.S.'s intoxication set the 2020 events in motion, her claim to be responsible for B.T.L.'s threat of firearm violence was wholly unsupported by the record.

In applying the eight factors set forth in N.J.S.A. 2C:58-23(f)(1) to (8), the judge found by a preponderance of the evidence that B.T.L has: (1) a history of threats or acts of violence directed toward others, N.J.S.A. 2C:58-23(f)(1); (2) a history of use, attempted use, or threatened use of physical force directed

7

toward others, N.J.S.A. 2C:58-23(f)(2); and (3) a prior arrest for a violent disorderly persons offense or domestic violence offense, N.J.S.A. 2C:58-23(f)(5). The judge gave significant weight to B.T.L.'s admission that he struck J.N. in the face during a domestic violence incident, for which he was arrested and charged. The judge noted that J.N. was injured and bleeding as a result of the assault. Judge Foti acknowledged that the records of the arrest and charge were expunged. She found, however, that B.T.L.'s admitted reaction to J.N.'s aggression to be highly relevant to whether an FERPO should be issued.

In addition, the judge found B.T.L.'s final text message to K.L. was a threat to use firearm violence against another and B.T.L. threatened the police officers by expressing his wish that they be murdered. While the judge noted B.T.L. was intoxicated when he made the threats, she did not expressly find that he satisfied factor seven, N.J.S.A. 2C:58-23(f)(7) ("has any history of drug or alcohol abuse and recovery from this abuse"). She found, however, that even though the petitioner did not introduce evidence of a mental health or substance abuse diagnosis, "these events convince this court that the court would be ill-advised to allow [B.T.L.] to possess firearms under the present circumstances."

Finally, the judge noted that even though there was no evidence that B.T.L. "has recently acquired a firearm, ammunition, or other deadly weapon[,]"

N.J.S.A. 2C:58-23(f)(8), he was in possession of a large number of firearms and a significant supply of ammunition. The judge noted her concern that one of the weapons was on a table unsecured next to ammunition while an intoxicated B.T.L. was engaged in an escalating exchange with K.L. in which he threatened firearm violence. The court characterized B.T.L.'s actions as not mere lapses in judgment but "red flags" predicting the danger of future firearm violence.[3]

The court found that the State proved by a preponderance of the evidence that B.T.L. will pose a significant danger of bodily injury to himself or others by owning, possessing, purchasing, or receiving firearms and ammunition. On July 14, 2020, the court entered an FERPO mirroring the terms of the TERPO.

Before us, B.T.L. raises one point:

> THE STATE FAILED TO MEET ITS BURDEN OF PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT [B.T.L.] POSES A SIGNIFICANT DANGER OF BODILY INJURY TO HIMSELF OR OTHERS BY HAVING WEAPONS.

B.T.L. also argues the FERPO violates his rights under the First and Second Amendments to the United States Constitution.

---

[3] The judge did not address the three factors in <u>Administrative Directive #19-9</u>, Guideline 3(d), as there was no evidence that B.T.L. recklessly used, displayed, or brandished a firearm or had a previous TERPO or FERPO issued against him. Nor do the four factors in <u>Administrative Directive #19-9</u>, Guideline 5(d) apply because there was no evidence B.T.L. has a mental health disorder.

9

Our review of the FERPO is guided by our recent holding in In re D.L.B. 468 N.J. Super. 397 (App. Div. 2021). There, we explained that the Act is intended to address the growing number of mass shootings by removing firearms from those who have shown "red flags" indicative of future violence. Id. at 401-02. The Act was modeled on the existing process for obtaining a domestic violence restraining order. Id. at 402.

As noted above, the Act establishes eight factors for the trial court to consider when deciding whether issuance of an FERPO is warranted. N.J.S.A. 2C:58-23(f)(1) to (8). No factor is determinative. Instead, after weighing each of the factors, "[t]he court shall issue the FERPO . . . if it finds 'by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others' by possessing a firearm." D.L.B., 468 N.J. Super. at 406-07 (quoting N.J.S.A. 2C:58-24(b)).

"The scope of appellate review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). We are bound by the trial court's findings "when supported by adequate, substantial, credible evidence." Id. at 411-12. When evidence is testimonial and involves credibility questions,

deference is "especially appropriate" because the trial judge is the one who has observed the witnesses first-hand. Id. at 412. We will not disturb a trial court's findings unless they "went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).

Having carefully reviewed the record and considered B.T.L.'s arguments in light of the Act and legal precedents, we affirm the July 14, 2020 FERPO for the reasons stated in Judge Foti's comprehensive and well-reasoned written decision. As Judge Foti found, there is ample evidence in the record on which to conclude that B.T.L.'s ownership, possession, purchasing, or receipt of firearms presents a danger to B.T.L. and others. B.T.L. has a history of physical violence during a domestic dispute with his teenage daughter present. In a second incident, when confronted with threatening messages from K.L., B.T.L. escalated the situation by threating to give K.L. "a taste" of several of the firearms he kept in his home. B.T.L. engaged in this dangerous behavior while intoxicated and with an unsecured firearm and ammunition readily available to him. When police responded to the scene, B.T.L. became increasingly agitated and expressed his desire that the officers be murdered. There are, as Judge Foti found, several "red flags" raised by B.T.L.'s behavior.

A-4327-19

B.T.L.'s constitutional arguments are without merit. Judge Foti did not, as B.T.L. suggests, punish him for the mere ownership of firearms in violation of the Second Amendment. Her decision to enter an FERPO was based on the threat of future firearm violence as established by B.T.L.'s past behavior. It was reasonable and appropriate for the judge to consider the significant amount of firearms and ammunition at B.T.L.'s disposal at the time that he was intoxicated and sent a message threatening the use of firearms. In addition, B.T.L.'s comments to K.L. and the officers were "true threats" that are not protected by the First Amendment. State v. Carroll, 456 N.J. Super. 520, 538 (App. Div. 2018).

To the extent we have not specifically addressed any of B.T.L.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4327-19